Welcome and ready to call the first case for argument. That would be Pllumi vs. Attorney General. Mr. Weill. Hey, please, the court. Nathan Weill for the petitioner, Tonin Pllumi. I would like to reserve three minutes of report time. Please. You want to pull that microphone down, please, sir. Speak right up. OK, so we get the recording and we can hear. Yes. Mr. Plumi filed a motion to reopen his proceedings, asking the Board of Immigration Appeals to find that events subsequent to his administrative appeal, namely a automobile accident that rendered him essentially gave him very serious medical conditions that continue to this day, including very serious head trauma. He asked the board to find that this evidence should allow him to stay in the United States and be granted asylum on the basis of other serious harm. Right? Yes, Your Honor. Now, you seem to concede in your brief that the the court typically lacks jurisdiction to review the decision of the board on a motion to reopen And I didn't see anything in your briefing to indicate that the Supreme Court's decision in Kankana had changed your mind about that. You're you're still agreeing with the government. Am I correct that under our precedent, we would ordinarily just not have jurisdiction to hear this at all? Is that right? Yes, that is correct. The Supreme Court's decision actually reserved a decision on the sui sponte motions. And most of the courts have said that means that they're the the old precedent decisions still stand and are still applicable. And of course, we're bound by our own courts prior decisions on that. Right? Yes, Your Honor. That's correct. I think it raises the Kuchana case does raise issues. But it would have you have to be something that would be decided by a full panel of the court, I believe. And I don't think this case requires the court to even go to that point, because the court always retains jurisdiction over any legal question or constitutional question. Under the amendment added by the Real ID Act of 2005. In this case, there are legal questions that that are raised by the board's decision. What's the precise legal question that if we were to agree with you, we've got jurisdiction and we sent this back to the board? What what would be the legal question we would put to them? The legal question would be, does Mr. Ploomy have has he met the eligibility for asylum under the 8 CFR 1208.13? There's a specific provision, as we said earlier, that allows somebody who may not have a well-founded fear anymore, but who was persecuted in the past to obtain asylum based on having other serious harm if they return to their country. The board's decision says that he didn't show that it was relevant to his fear of persecution, which doesn't make sense in light of the very specific language of the regulation that says he can retain, he can obtain asylum based on other serious harm. And it doesn't say other serious harm related to his fear of persecution at all. Is it one fair reading of the board's opinion that it did look at the other harm and just decided this wasn't enough? I mean, the board ran through a series of things in saying that, you know, it doesn't look like this is an exceptional circumstance. Is that a – were they – when they talked about under the circumstances, could we read them as having included his health issues as the circumstances? Well, they did say health issues, but they seem to be under the mistaken belief that a person cannot get asylum if it's not relevant to their fear of persecution, which is – their finding that there's no exceptional circumstances comes directly after that, doesn't reference, you know, any sort of finding that he wouldn't be eligible for asylum, even if they considered the medical evidence as other serious harm if returned to Albania. They seem to think he's asking for some sort of humanitarian relief that the board doesn't even have jurisdiction to give, which is completely contrary to what he actually asked the board to find in its decision. Well, it's a kind of humanitarian relief, right? It is humanitarian relief, but it's a humanitarian relief that the board does have jurisdiction to give to him as opposed to one where he's just saying, please don't send me out of the country. So does that mean going forward that any instance or any time that someone has a serious medical condition that has come about while they're here, regardless of what their status is, that this is going to be a basis or this can be a legitimate basis for asylum or other relief? Only if they suffered past persecution and no longer have a well-founded fear of persecution due to, for instance, in Albania's case, it's because of a very serious change in the governmental structure, whereas – So you're saying the health condition is irrelevant unless there is sufficient evidence of past persecution. He was – well, he was assumed to have suffered past persecution already by the board, but they said due to change of country conditions in Albania, he no longer really has a well-founded fear. And what we're asking the board to do is say, well, even if that's true, because of the other serious harm he would suffer, it's not just the medical conditions. It's the fact that Albania has an atrocious – almost no medical facilities at all, especially in the area of the country where he was from. So that means that any time that any applicant came to the board from a country that had a medical system that could provide medical care not to the standard of the United States, this is an argument available to that person? Right. And that's – isn't that really the problem? It's not that it's not to the standard. Very few countries have medical care to the standard of the United States. It's that theirs are absolutely atrocious. It's been – you know, it's been documented by numerous nongovernmental agencies that they just have no medical care to help this person. Well, that would be true of most of Africa. So that means that any time we have anyone in that position who can make a similar – showing that the medical care or medical system is in crisis or not able to provide legitimate service, that that should be a critical concern? I would say if they did suffer past persecution and they no longer have a fear and they have very serious medical conditions, not just a standard – a person with no real serious medical history, a person that has very, very serious medical conditions. And we should note that he's not being a burden on the U.S. government. He went to court and he won a judgment that he has private medical care in the United States. And, you know, I think if a person under that circumstances would be sent back to a country, for instance, Albania, for instance, countries in West Africa that have very poor medical systems, that person should be entitled to asylum if they suffered past persecution. It's a humanitarian form of relief. And the board as well as Congress wanted to make sure that a person who suffered past persecution and would suffer if they were returned to their country, whether past persecution or other harm, should be allowed to stay in the United States. If the board decides they should. I mean, you're going to the heart of the discretion that the board exercises, aren't you? I'm sorry. Well, this court does have jurisdiction over that one discretionary issue. All the most discretionary issues this court does not have jurisdiction over. The law specifically says the court does have jurisdiction over the board's exercise of discretion. I'm confused. I thought your argument was not that we could review how the board exercises discretion, that is, whether it was a good idea to let Mr. Plumy stay here or not based on medical condition, but that your argument was that the board misunderstood its own authority. That is, that the board thought it couldn't consider his medical issues as other serious harms. Now, those to me are very different questions. If your argument is, hey, send this back because the board just messed up about its own authority, it said it couldn't review that his medical history was irrelevant, and that's not true because under other serious harms it could be relevant, that's one question. If your argument is, hey, substandard medical care in Albania means the board abused its discretion, that's a different question, isn't it? Yes, that is correct. And under the circumstances of this case, because it's a substantive motion, you're right, the board would not, I mean, this court would not have jurisdiction if the board said, for instance, well, we acknowledge everything, but we still think he doesn't deserve discretion to reopen the case. I think under this court's decision in Cruz and in Pinho, I don't think, unless something changes, I don't think he would have, you know, standing to come before this court. But as you said – Wait a minute, wait a minute. Sorry, not standing. The court wouldn't have jurisdiction. I'm sorry. What exactly do you think the BIA said about humanitarian asylum under Capital B? Did they say anything? Did they say they didn't have jurisdiction to consider it here, or did they say he doesn't qualify? Or what did they say, as you understand it? As I understand it, what they said was his medical conditions do not count because they're not relevant to his fear of persecution. And that just is contradictory to the regulation. And I don't know, I think the court should send the case back for the board to make that determination in the first instance or at least explain why it seems so contradictory to the regulations. I see I'm out of time. All right. Thank you. You have your three minutes for rebuttal. Thank you, Your Honor. Mr. Boussin, am I saying your name right? Yes, sir. All right, thanks. May it please the court. My name is Jesse Boussin, and I represent the Attorney General. This is a case involving the Board of Immigration Appeals' denial of an untimely motion to reopen and reconsider, where Mr. Plumy sought to reopen proceedings based on alleged change in country conditions in Albania. And a petitioner was represented by counsel before agency and received a full and fair hearing before both the immigration judge and the board. Mr. Plumy initially sought asylum from Albania based on his- Would you put the microphone in front of you, please? Oh, yes, Your Honor. Is that better, Your Honor? Yes. Okay. Mr. Plumy initially sought asylum from Albania based on his Catholic faith and his support of the Democratic Party. And his claim- Let's-I think everybody agrees that what we're talking about now is the sua sponte, the denial of the motion to reopen sua sponte, which is focused on other serious harm to health care stuff. So maybe I could get you to start there with the question of-that's posed by your opponent, namely that the board seems to have said-in fact, did say your health care is irrelevant to your persecution claim. And they rightly point out we never said it was. That's not our argument. Why is the petitioner wrong when he says they just shanked it? They just missed my argument completely. You've got to send it back because they misunderstood what we were talking about, and they didn't address what we were talking about. Well, Your Honor, what the board said here was factually correct. The injuries that Mr. Plumy incurred in the United States do not directly relate to his fear of persecution in Albania. And his point is I never said they do. That's not my argument. So if the board is right in saying that, they're saying so what, and I'm kind of left wondering so what. They never made that argument. Their pitch was there's another basis in the law which the BIA never addressed. There's the other serious harms point under 8 CFR 1208.13B1, three little I's, big B. And that's the thing we're talking about. And they never addressed that, and they just didn't get it, and they need to address that. Why is that argument wrong? What's wrong with that argument? Well, I think the board did address the argument. And I think in saying that this is not relevant to his fear of persecution, what the board was saying was delineating between its authority to reopen, an untimely motion to reopen based on a change in country conditions, which it denied based on its failure to show change in country conditions, and its authority or its ability to reopen proceeding sua sponte based on this change in personal circumstances, which is not recognized as a basis for reopening under the INA. The board has recognized that it has the authority to reopen sua sponte based on this. Where? Where in this opinion or in this decision did they acknowledge, we understand you're making another serious harm argument, and looking at that argument, we just don't think you're right. We don't think that differentials in health care conditions in Albania and the United States qualify you to make this argument and that you'll suffer other serious harm. Within the discretion we have to exercise, we deny you. Can you point me to anything that even remotely says that in the BIA's decision? Well, the board in this case recognized his injuries, stated that he had another avenue for relief here in terms of humanitarian parole and or deferred action before DHS. And thus, under those circumstances, he did not present an exceptional situation that would warrant reopening in this case because he had other avenues of relief to seek rather than humanitarian asylum before the board, which is a more extraordinary form of relief. It grants affirmative benefits to the alien as opposed to humanitarian parole or deferred action. Well, help me a little bit with that. Well, first of all, they said a little bit more. They said a request for humanitarian parole for medical treatment is within the jurisdiction of the DHS, not the immigration courts or this board. And they cited a case, the matter of Medina, in which – which turns on the absence of BIA jurisdiction. I read that to say that they don't have jurisdiction to – I couldn't understand why they were saying that unless they were saying that they didn't have – they didn't regard themselves as having jurisdiction over this claim because they should have done – they should have elected another remedy. Now, let's start out with what is this other remedy? What is humanitarian parole and how does it differ from humanitarian asylum? Well, humanitarian parole or deferred action are remedies that the alien can seek by, I believe, applying to DHS, submitting information regarding whatever medical problems he might have or some other reason why removal would create hardship to the alien. And DHS, under its own authority, can grant a parole or deferred action. It can defer removal until such time as the hardship would not be as great. I believe that is what humanitarian parole and deferred action are comprised of. You're saying humanitarian parole is for a limited period of time, whereas asylum is asylum. Well, asylum in this case, if the alien was granted humanitarian asylum, that would give him a basis through which he could adjust his status to that of a lawful permanent resident. It would give him a basis through which to normalize his status in the United States. And I believe that humanitarian parole and deferred action do not grant that route to permanent residence or citizenship through that, that they don't grant any other affirmative rights that the alien would have in the United States aside from simply deferring removal for a time. Although, you know, I would be happy to present additional briefing on the issue of humanitarian parole and deferred action if the court feels that that would be helpful. Was there any reason to believe that Congress intended humanitarian parole to be an exclusive remedy, exclusive of humanitarian asylum? That, again, I am not sure of how Congress or how they separated out humanitarian parole and humanitarian asylum in this case. I would point out that Petitioner in this case was asking for exceptional relief. He was asking the Board to reopen proceedings, notwithstanding the fact that he was not statutorily eligible to reopen proceedings based on these injuries. I don't think anybody's confused about that. The problem that we're having here, or at least that I'm having, I only speak for myself, is I'm going to read this paragraph in the Board's decision. What it says is, Respondent's concerns about his future health care are not relevant to his persecution claim. And the Petitioner says, I never said they were. It goes on to say what Judge Stapleton just quoted to you about the Board saying, you should have gone to DHS. When it comes to humanitarian parole, that's for DHS. It's not within our jurisdiction. And the implication is, we've got nothing to do with this. That's at least implied there. And, of course, that's not so. There's humanitarian asylum. There's a specific regulatory provision that provides for it. The Petitioner says, I told them what I wanted. I told them the regulatory provision I was approaching them under. I wanted them to be considered under that. They never considered me under that. They said two things that are irrelevant. It doesn't have to do with persecution. Irrelevant. DHS has some analogous thing you could ask for. Irrelevant. I'm asking you, BIA, for something you can do under a specific regulation that gives you authority, and you never addressed it. Now, that's the question I think we're wrestling with. How do we deal with a Board decision that doesn't address the Petitioner's argument? Well, in this case, Your Honor, the Board specifically said that under the circumstances given by Petitioner that he failed to establish an exceptional situation which would warrant reopening. The other two statements of the Board have to be read in that context. As I said, first of all, the statement that this isn't relevant to his claim of persecution, the Board was setting off its argument. This is not relevant to his claim of changing country conditions. This is something that he's not asking for reopening based on a statutory right to reopening, but based on our own sua sponte authority to reopen. Let me ask this. I understand that you're suggesting that we could read under the circumstances to mean we've considered the circumstances, we understand what you're asking for, and we just deny it. I understand your argument that that's happening. Can you point to anything in the language of the decision, though, that indicates we get it, we know that you're asking for relief under the other serious harms provision of humanitarian asylum, and we're exercising our discretion? Because there are things in this paragraph that indicate that maybe they didn't get it. Is there anything that indicates that they did get it? I would note that the Board cited its own decision in matter of JJ signing part of that decision that states that sua sponte reopening is not for the purpose of circumventing statutory deadlines. I would note at this point that Petitioner's injuries occurred in May 2006 while the decision of the immigration judge was still on appeal before the Board, and Petitioner did not seek remand before the Board based on the fact of his injuries at that point, and he did not seek, he did not file a timely motion to reopen. At both of those stages, the Board could have considered this. And he's not claiming they did. He's not saying I was timely. I think, as I understand, I'll let Mr. Weil speak for his client himself, but I understand his point to be not, hey, I did this the right way for a motion to reopen, I was on time. It's just the question of whether the Board actually addressed their argument or not. So that's why I'm asking you, can you point me to something in the Board's decision itself that we could look to and say, yeah, they did understand it, they just didn't agree that it was exceptional? Well, in this case, I think if the Board simply said without the prior two sentences, had just put in the third sentence, we don't find an exceptional situation, that there wouldn't necessarily be an argument here that it didn't consider this. There would be no indication. Here, neither of the two statements that the Board gave that this is, you know, this is not relevant to his claim of persecution, which is factually correct, and the statement that he has these other avenues of relief, which the Board doesn't have jurisdiction over, but which he could still seek, support the Board's determination that under the circumstances, he has not established an exceptional situation warranting sua sponte reopening in this case. Assuming that one were to conclude that there was no evidence or insufficient evidence that the Board had considered the claim that was being made to it here, do you agree that we would have jurisdiction to send it back for further consideration and explanation of the decision? Well, in this case, the INA does... In recognition of the fact that this is sua sponte, a sua sponte reopening situation. The argument could be made here, Your Honor, that this is not any sort of legal deficiency. This is a... The Board simply stating, under its discretion, we don't find an exceptional situation. And the Board has a broad discretion, and the Court has recognized that it doesn't have jurisdiction over that. That doesn't really answer the question. I was asking you to assume that the Board did not say, we understand this claim and there's... It's not enough to support it, but either didn't address it or say, we don't have jurisdiction, you've got to go elsewhere. Would we have jurisdiction to send it back for further proceedings? And I'm going to ask you, in particular, to comment, if you can, on Mahmoud, which is a Second Circuit case last year that's cited by your opponent for the proposition that we do have jurisdiction, even though it is a sua sponte motion. Sua sponte motion, that's kind of a contradiction in terms, but it's an issue dealing with sua sponte reopening. Again, that's... I'm not entirely prepared to discuss that issue today, unfortunately, Your Honor. Again, I would be happy to submit a supplemental briefing on that issue if the Court deems it necessary in this case. But I've not familiarized myself with that particular case in this instance. Appreciate your candor. All right. And I see I'm out of time. If the Court has no further questions? No. Thank you. Ms. Weill. I would just like to note that we do concede that the motion is out of time. We know that, you know, we know we're asking for an exceptional form of relief for the Board, but what my client, what Mr. Pumi, all he asked was, please consider, please, please, basically begging the Board, please consider about giving me asylum based on this. And the Board essentially punted on the issue. Based on this? What is this? Are you talking about the iteration of your argument that Judge Jordan put out? Yes, that his medical conditions combined with the dearth of medical care in Albania gives rise to that he would suffer other serious harm if he was returned to Albania. And I would like to note that the government wants to suggest that the first sentence of the paragraph in which they talk about Mr. Pumi's medical condition not having any relevance, the government would submit that the Board is talking about changed country conditions. But the Board already had two paragraphs talking about changed country conditions. This other paragraph has nothing to do with changed country. There's no suggestion that they were continuing on with this, especially in light of the later sentences talking about humanitarian parole and deferred action, which are temporary forms of relief, which he did seek before the agency, but they are temporary. He was seeking asylum, which is essentially permanent. I want to make sure I understand. So the medical condition and the dearth of medical care in Albania, that is the other serious harms? Yes, if he was sent back to Albania, he would not be able to receive the cognitive therapy that he requires, and he would not be able to receive the surgery that he requires to remove glass from his skull and also to fix a broken vertebra in his back. It just – Albania does not have the capacity to provide that sort of medical care, and he's requiring it. He's permanently disabled. We submitted quite a bit of evidence that shows that he is permanently disabled. He will never be able to be back to completely normal, especially with the serious head condition, the cognitive impairment, which requires essentially permanent therapy. I see I'm out of time. If there's any other questions, I will. Okay, thank you very much, Mr. Brown. Thank you, Your Honors. Thank you both, counsel, for Weller. We appreciate it, and we'll go ahead and call the next case, Benjamin v. Department of Health.